```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    EASTERN DIVISION
```

```
FRED BURNS                                          PLAINTIFF

VS.                           CIVIL ACTION NO. 4:05CV192TSL-LRA

BLACKHAWK MANAGEMENT CORPORATION                    DEFENDANT
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred Burns filed this lawsuit on December 27, 2005 against his former employer, Blackhawk Management Corporation (Blackhawk), to recover damages for alleged violation of the Fair Labor Standards Act's (FLSA) overtime and anti-retaliation provisions, and alleged wrongful discharge and tortious interference with an employment contract.  Blackhawk has moved for summary judgment on all of plaintiff's claims.  In response to Blackhawk's motion, plaintiff has conceded his state law claims for wrongful discharge and tortious interference with contract, but he opposes the motion as to his FLSA overtime pay and retaliation claims.  Having now considered the memoranda of authorities, together with attachments, submitted by the parties, the court concludes that Blackhawk's motion should be denied as it pertains to plaintiff's claim for overtime compensation, as there are genuine issues of material fact regarding the exact nature of plaintiff's employment duties, but the motion should be granted as to all other claims and issues raised.

In 1999, Blackhawk was contracted by FedSource, Inc. to provide construction services to the federal government on a construction project at the Naval Air Station in Meridian, Mississippi. Blackhawk employed plaintiff Fred Burns as a construction representative and assigned Burns to the NAS project. Burns had worked as a construction representative for various employers for about twenty years and had extensive knowledge, training and experience in various aspects of construction. Generally, Burns' job involved monitoring the work of contractors on the project to ensure the work was properly performed.

According to Blackhawk, although Burns was a salaried employee, the company paid him overtime at his regular wage rate for all hours worked over forty. However, Burns took the position that under the FLSA, he was entitled to time-and-a-half for his overtime hours, and he immediately began to complain that he was not being properly compensated for his overtime hours. In response to Burns' complaints, Blackhawk took the position that he fell under the FLSA's administrative employee exemption and thus refused his demands for additional compensation. Over the years, Burns continued to complain, and did so frequently. In March 2004, he again complained to Blackhawk's president Linda Moorehead, who told him there would be no further discussion concerning his classification or pay. Burns did not stop, however, and continued to complain, not only to Blackhawk, but

2

also to FedSource and to the Navy, sending emails and calling FedSource to complain about what he considered Blackhawk's erroneous classification of him as exempt and his consequent underpayment for overtime.  After one such phone call to FedSource, which was reported to her by FedSource, Moorehead terminated Burns' employment.  In this action, Burns asserts claims for violation of his right under the FLSA to overtime compensation and for retaliatory discharge in violation of the FLSA.

    The FLSA requires employers to pay overtime compensation to employees who work more than 40 hours per regular workweek.  29 U.S.C. § 207 (1995).  Under the FLSA's enforcement provisions, employers which violate the Act may be required to pay uncompensated overtime, together with civil penalties and liquidated damages.  29 U.S.C. § 216 (1995).  However, the FLSA exempts from its overtime requirements, any salaried employee "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  See Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 264 (5th Cir. 2000). "These exemptions are construed narrowly against the employer and the employer has the burden of proving that an employee is exempt."  Tyler v. Union Oil Co. of Ca., 304 F.3d 379, 402 (5th Cir. 2002) (citing Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990)).  See also Mutch v. PGA Tour, Inc.  2006 WL 510068, *4

(M.D. Fla. 2006) (recognizing employer's "high burden" to establish an employee is an exempt administrative employee).

Blackhawk maintains that Burns' claim for overtime compensation fails because the evidence establishes beyond dispute that Burns was an exempt administrative employee under 29 U.S.C. § 213(a)(1). Burns contends that there are at the very least factual disputes as to the nature of his duties which preclude summary judgment.[1]

Regulations issued by the Secretary of Labor define administrative employee as an employee whose primary duty consists of office or nonmanual work directly related to management policies or general business operations for the employer or the employer's customers, which includes work requiring the exercise of discretion and independent judgment. 29 C.F.R. §§ 541.2(e)(2), 541.2(e)(1). Additional regulations elaborate on these requirements, providing, for example, that "[w]ork related to management or general business operations includes. . . quality control . . ., legal and regulatory compliance, and similar activities. . .," 29 C.F.R. § 541.201(b); exemption inapplicable to employees who "simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry

---

[1] The court rejects Burns' argument that Blackhawk failed to raise this affirmative defense.

or set of circumstances," 29 C.F.R. § 541.604; "[o]rdinary inspection work generally does not meet the duties requirements for the administrative exemption," 29 C.F.R. § 541.203(g); "[p]ublic sector inspectors or investigators of various types, such as . . . construction . . . generally do not meet the duties requirements for administrative exemption. . . ," 29 C.F.R. § 541.203(j); "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level," 29 C.F.R. 541.202(c).

In general, Blackhawk argues that Burns' duties placed him squarely within the administrative exemption. It contends he was paid on a salary basis (an issue about which there is no dispute); that he worked with virtually no supervision or oversight; that his job was essentially one of "quality control" and thus was obviously related to Blackhawk's general business operations; that he relied on his training, knowledge, discretion and independent judgment to determine whether the work complied with the relevant specifications and industry standards; and that every time he made a decision about the work, he exercised discretion and independent judgment. Burns, on the other hand, insists he did not exercise the kind of discretion and independent judgment contemplated by

the regulations and that in fact, he had "no discretion at all," as all his actions were "observing and inspecting construction work and reporting any problems to the project manager to make a decision." As Burns puts it, he "was little more than a glorified tattletale" whose only authority was to inspect and report to the project manager. He could not change anything or address problems he found; he could not accept work or reject work; he merely used his skills in applying well-established techniques, procedures or standards described in manuals and other sources, and if he observed a problem, he could do nothing more than report it to the project manager.

Having considered the parties' arguments and evidence, and viewing the evidence in the light most favorable to plaintiff, the court is unable to conclude as a matter of law that Burns' position was exempt. In the court's opinion, there are factual issues regarding the extent to which plaintiff's duties concerned defendant's general business operations and the extent of Burns' discretion and independent judgment.[2] Accordingly, it will deny

---

[2] Although the ultimate question of "whether [an employee's] particular activities exclude [him] from the overtime benefits of the FLSA is a question of law . . . governed by the pertinent regulations promulgated by the Wage and Hour Administrator," Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, (1986), "the amount of time devoted to administrative duties, and the significance of those duties, present factual questions," Spinden v. GS Roofing Products Co., Inc., 94 F.3d 421, 426 (8th Cir. 1996). See also Yuen v. U.S. Asia Commercial Development Corp., 974 F. Supp. 515, 527-528 (E.D. Va. 1997) ("Whether an employee's duties require 'real and substantial'

the motion for summary judgment on plaintiff's claim for overtime compensation.³

Turning to plaintiff's retaliation claim, the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  29 U.S.C. § 215(a)(3). A claim of retaliatory discharge is analyzed under the same shifting burden test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998).  The plaintiff has the burden of establishing a prima facie case of retaliation and must show: (1) participation in a protected activity; (2) an employment

---

discretion, and whether this discretion is exercised with respect to 'matters of consequence' are questions of fact.").

³  The court's determination that summary judgment should be denied on this issue has been made without reference to plaintiff's arguments that he would have been properly classified by defendant had defendant simply made a conformance request, as required by the Service Contracts Act.  Plaintiff has not asserted a claim under the Service Contracts Act, nor could he, as the Act provides no private right of action.  He appears to be contending, though, that his contract was governed by the SCA and that under SCA standards and regulations, his position clearly was classified as nonexempt.  The relevance of the SCA to plaintiff's claims is an issue that need not be decided at this time but which may be reserved for another day.

action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. See Holt v. JTM Indus., Inc., 89 F.3d 1224, 1225-26 (5th Cir. 1996). Once the employee demonstrates a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the employee's rejection. McDonnell Douglas Corp., 411 U.S. at 802. The employee then has the opportunity to rebut the employer's explanation and show that the reason given is pretextual. See id. at 804.

   In its motion, Blackhawk argues that Burns' alleged complaints are insufficient to show he engaged in protected activity because informal complaints by an employee that his employer has violated the FLSA do not constitute protected activity covered by the FLSA's anti-retaliation provision. The Fifth Circuit has not considered this question. However, of the nine circuits that have, eight have explicitly held that informal complaints are protected. See Valerio v. Putnam Assocs. Inc., 173 F.3d 35 (1st Cir. 1999) (holding that "the animating spirit of the Act is best served by a construction of § 215(a)(3) under which the filing of a relevant complaint with the employer no less than with a court or agency may give rise to a retaliation claim"); Brock v. Richardson, 812 F.2d 121, 124-25 (3d Cir. 1987); EEOC v. Romeo Community Schools, 976 F.2d 985, 989 (6th Cir. 1992); Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181 (8th Cir.

8

1975); Lambert v. Ackerley, 180 F.3d 997, 1004 (9th Cir. 1999); Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984); EEOC v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir. 1989). Only the Second Circuit has held to the contrary. See Lambert v. Genesee Hosp., 10 F.3d 46, 55-56 (2d Cir. 1993) (holding that "[t]he plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass" oral complaints to a supervisor that an employee was being paid less than the complainants thought she should have been).[4] The court believes the Fifth Circuit would follow the reasoning of the vast majority of courts and hold that informal complaints do constitute protected activity.

---

[4] Although the issue was not specifically before the Seventh Circuit in Scott v. Sunrise Health Care, Inc., 195 F.3d 938, 940-41 (7th Cir. 1999), the court in Scott affirmed summary judgment for the employer on the basis that the plaintiff had failed to demonstrate a causal link between her complaint to her employer that she had not been paid overtime in accordance with the FLSA and her subsequent termination. The court observed that the employee had only complained internally about the failure to pay overtime wages, and yet it did not suggest that she had not engaged in protected activity.

Moreover, while defendant fails to mention any of the numerous cases from other circuits that are flatly contrary to its position, it does cite Ball v. Memphis Bar-B-Q Co., Inc., 228 F.3d 360 (4th Cir. 2000), as holding that informal complaints are not protected. However, that is not what the court in Ball held; on the contrary, the court in Ball suggested in dicta that informal complaints are protected under the FLSA. Id. at 363.

In addition to its argument that internal/informal complaints cannot be the foundation for a retaliation claim, Blackhawk's main argument in support of summary judgment on Burns' retaliation claim is that Burns was fired not because he complained of an alleged FLSA violation but because of the unreasonable manner in which Burns complained.  In the analogous context of Title VII retaliation jurisprudence, the Fifth Circuit has recognized that while an employee has the right to oppose an employer's unlawful employment practices, "not all 'opposition' activity is protected," Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025, 1036 (5th Cir. 1980), and that "some conduct, even if in sincere opposition to unlawful employment practices . . ., may be so disruptive or inappropriate as to fall outside the protections" of the act, be it Title VII or the FLSA, see Jones v. Flagship Intern., 793 F.2d 714, 728 (5th Cir. 1986).  See also Rosser v. Laborers' International Union, Local 438, 616 F.2d 221, 223 (5th Cir.), cert. denied, 449 U.S. 886 (1980) ("There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed.  In such a case, his conduct, or form of opposition, is not covered by § 704(a).").  "In determining whether particular conduct constitutes [protected] activity . . ., this circuit has required a balancing test: '[T]he courts have required that the

10

employee conduct be reasonable in light of the circumstances, and have held that "the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare".'" Jones, 793 F.2d at 728 (quoting Jeffries, 615 F.2d at 1036); see also Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1145 (5th Cir. 1981) ("Courts have required that the employee's conduct be reasonable in light of the circumstances and that the conduct not be unjustifiably detrimental to the employer's interests."). "If, under this balancing test, the manner in which the employee complains is found to be unreasonable, it falls outside the protection of the statute; the employee's conduct then may be deemed an independent, legitimate basis for [the adverse employment action]." Rollins v. State of Florida Dept. of Law Enforcement, 868 F.2d 397, 401 (11th Cir. 1989); see also Payne, 654 F.2d at 1142 ("If the defendant took an adverse employment action against the plaintiff because of opposition conduct by the plaintiff that was outside the protection of the statute, then the defendant may have had a legitimate, nondiscriminatory reason to justify its actions."); Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 229 (1st Cir. 1976) ("Certain conduct for example, illegal acts of opposition or unreasonably hostile or aggressive conduct may provide a legitimate,

11

independent, and nondiscriminatory basis for an employee's discharge.").

The Fifth Circuit's balancing test was derived largely from <u>Hochstadt</u>, in which the court discussed at length the interests and rights of both the employee and employer. The court in <u>Hochstadt</u> recognized that while an employee has a right to express his opposition to unlawful employment practices, "an employee does not enjoy immunity from discharge for misconduct merely by claiming that at all times she was" merely "opposing" discriminatory practices. 545 F.2d at 230. On the one hand, the court wrote, an employer's "[m]anagement prerogatives . . . are to be left undisturbed to the greatest extent possible (so that) [i]nternal affairs of employers . . . must not be interfered with except to the limited extent that correction is required in discrimination practices." <u>Id</u>. (quoting Additional views on H.R. 7152, U.S. Code Cong. & Admin. News, p. 2516 (88th Cong., 2d Sess., 1964). "'On the other hand, [Title VII] clearly does protect an employee against discharge for filing complaints in good faith before federal and state agencies and for registering grievances through channels appropriate in the particular employment setting." <u>Id</u>. at 230-31. "It is less clear," the court wrote, "to what extent militant self-help activity falling between these two poles, such as particular types of on-the-job opposition to alleged discrimination, vociferousness, expressions

12

of hostility to an employer or superior and the like, are protected." Id.

The court concluded that in the end, in determining whether an employee's conduct went "too far," courts must apply a rule of reason, taking into consideration both the purpose of the Act to protect persons reasonably engaging in opposition activity and the employer's interests and "management prerogatives." Id.; id. at 232 ("[I]n determining whether conduct is protected opposition, a court must balance the setting in which the activity arises and the interests and motivations of both employer and employee."); see also Rollins, 868 F.2d at 401 ("[T]o qualify for the protection of the statute, the manner in which an employee expresses her opposition to an allegedly discriminatory employment practice must be reasonable. This determination of reasonableness is made on a case by case basis by balancing the purpose of the statute and the need to protect individuals asserting their rights thereunder against an employer's legitimate demands for loyalty, cooperation and a generally productive work environment.").

As an example of a case in which this type of balancing had occurred, the court in Hochstadt cited EEOC v. Kallir, Philips, Ross, Inc., 401 F. Supp. 66 (S.D.N.Y. 1975), in which the plaintiff was discharged for discreetly obtaining from a customer of her employer a written description of her job which had been requested by the New York City Commission on Human Rights during

13

its investigation of the employee's charge of sex discrimination. In holding that the employee's activity was protected, the court had noted that her action in soliciting the information had no effect on her employer's relationship with its customer, and that the employee not only had a legitimate purpose for obtaining this information as she needed it to pursue her claim but that her actions were circumspect (she asked the customer's employee from whom she sought the information because she had filed charges to keep her claim confidential). Kallir, Philips, Ross, Inc., 401 F. Supp. at 72.

Another case cited by the court in Hochstadt was similar to this one in that the employer admitted that its decision to discharge the employee was based in part on her frequent complaints of underpayment. In Ammons v. Zia Co., 448 F.2d 117 (10th Cir. 1971), the discharged employee had a long history of complaining that her low salary was based on her sex. While this was a factor in the discharge decision, the employer denied that the underlying allegation of sex discrimination influenced its decision. The appellate court declined to disturb the district court's finding that "(p)laintiff was discharged because of a series of incidents, not related to her sex . . . ." Id. at 121.

In the court's opinion, Blackhawk has established beyond dispute that Burns was discharged, not simply because he complained that he was not being properly compensated for overtime

14

hours, which he had done for years, but because of the unreasonable manner in which he complained. In a nutshell, there came a point when he went "too far."

It is undisputed that Burns complained repeatedly over a period of five years to Blackhawk, starting from the day he received his first paycheck, that Blackhawk was not paying him time-and-a-half for overtime as he insisted was required by the FLSA. There finally came a time when Moorehead, Blackhawk's president, told him that she was through discussing the issue with him and to drop the matter. At that point, his reasonable options were to either stop complaining or to file a complaint with the Department of Labor. See Hochstadt, 545 F.2d at 231 (noting that an employee who feels that his employer has violated his rights "may pursue specific state and federal legal remedies for discrimination and need not rely on vigorous internal action directed against the employer"). Only when Burns persisted in complaining and went outside the company, against Moorehead's instruction, and complained to FedSource, Blackhawk's direct customer, and to the Navy, Blackhawk's indirect customer, that Blackhawk was not paying him in accordance with the FLSA, did Blackhawk finally take action against him. Blackhawk submits that it was amply justified in discharging him under the circumstances.

Where a defendant offers evidence that the plaintiff's conduct was unreasonable and outside the protection of the statute

so as to provide the defendant with a legitimate, nondiscriminatory reason for its employment action, the plaintiff "is entitled to an opportunity to show that his activities were reasonable under the circumstances and were warranted by the employer's conduct." Payne, 654 F.2d at 1145. Plaintiff has offered no such evidence here. He obviously did not get the response he wanted from Blackhawk; but he has offered no justification for turning to Blackhawk's customer in an effort to force Blackhawk to pay him according to what he believed he was entitled under the FLSA. If he believed Blackhawk's refusal to pay him time-and-a-half for his overtime violated the FLSA, then his recourse was not to turn to Blackhawk's customer, but rather to file a complaint with the Department of Labor. As the court in Hochstadt observed, an employee is protected from discharge for filing complaints in good faith before appropriate federal and state agencies and "for registering grievances through <u>channels appropriate in the particular employment setting</u>." 545 F.2d at 230-31. As Burns has not shown that complaining to FedSource was an appropriate channel in this particular employment setting, he has failed to rebut Blackhawk's legitimate nondiscriminatory reason for his discharge. His claim for retaliation will therefore be dismissed.[5]

---

[5] From this, it follows that plaintiff's claim for punitive damages must be dismissed as well, for while punitive damages may or may not be available in this circuit under the

Blackhawk contends that even if Burns is entitled to overtime, any back pay award must be limited to that earned for the two years before he filed his complaint because any possible misclassification of Burns as exempt under the FLSA was not willful. See 29 U.S.C. § 255(a) (an action for unpaid wages "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"). A violation is "willful" if the employer either "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, (1988)). In her affidavit submitted in support of Blackhawk's motion, Linda Moorehead states that when Burns began to complain that his position should not be classified as exempt, she instructed a human resources employee to contact a human resources consultant, Ceridian HR Comply Helpline, for advice. Ceridian could not provide an answer, but provided the applicable regulation. Moorehead states that she evaluated Burns' duties in light of the regulation and concluded he was exempt. However,

---

FLSA's anti-retaliation provisions, they are not available to a plaintiff who asserts only an unpaid overtime claim. See 29 U.S.C. § 216(b).

17

when he continued to complain, she asked Rick Plum, a Blackhawk employee with a law degree, to look at the issue. Plum reported back to Moorehead that he agreed Burns was exempt. Blackhawk asserts that whether it was right or wrong, it formed a good faith belief that Burns was exempt, which, it submits, is validated by the fact that the Department of Labor ultimately investigated the issue and concluded that Burns was exempt. The court agrees, and therefore, concludes that even if he succeeds in proving entitlement to overtime pay, Burns will be limited to back pay for a period of two years.

Pursuant to 29 U.S.C. § 216(b), employers who violate the FLSA may be held liable for liquidated damages, though under § 206, a district court can decline to award, or reduce the amount of liquidated damages if it finds the employer acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA. While Blackhawk has presented evidence that it acted in good faith and with reasonable grounds for concluding Burns was exempt from FLSA coverage, the Fifth Circuit has held that "even if an employer does introduce evidence supporting a 'good faith and reasonable belief' defense, the trial court may still, in its discretion, award liquidated damages." Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1416 n.8 (5th Cir. 1990) (citing McClanahan v. Mathews, 440 F.2d 320 (6th Cir. 1971)); see also Samson v. Apollo Resources, Inc., 242 F.3d 629,

18

640-641 (5th Cir. 2001) (suggesting that liquidated damages may be warranted where employer fails to change its policy after becoming aware of its violations). Blackhawk has introduced evidence demonstrating its "good faith" and "reasonable belief" that Burns was properly classified as exempt. Burns argues that liquidated damages would nevertheless be appropriate because Blackhawk improperly classified Burns due to its failure to follow federal law and process a conformance request (as allegedly required by the Service Contracts Act), and because it "failed to adequately review and apply applicable federal law." The court is not persuaded, and accordingly concludes that summary judgment should be granted on his claim for liquidated damages. See Lee v. Coahoma County, Miss., 937 F.2d 220, 226-27 (5th Cir.1991)("If the district court finds that employer's action which violated the FLSA was taken in good faith, which good faith was supported by reasonable grounds for believing that the actions complied with the FLSA, it may choose not to award liquidated damages.").

Based on the foregoing, it is ordered that Blackhawk's motion is granted in part and denied in part, as set forth herein.

SO ORDERED this 6th day of March, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE