```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                   EASTERN DIVISION
```

FRED BURNS                                             PLAINTIFFS

VS.                           CIVIL ACTION NO. 4:05cv192TSL-LRA

BLACKHAWK MANAGEMENT CORPORATION                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred Burns brought this action against his former employer, Blackhawk Management Corporation (Blackhawk), charging that Blackhawk failed to pay overtime compensation in violation of the Fair Labor Standards Act's (FLSA), 29 U.S.C. § 201 et seq. In response to plaintiff's allegations, Blackhawk maintained that plaintiff was not due overtime compensation as he fell under the FLSA's administrative employee exemption. This court previously denied Blackhawk's motion for summary judgment, finding there were issues of fact regarding the exact nature of plaintiff's employment duties. The case was tried to the court, and the court, having considered the evidence adduced by the parties in light of the applicable law, concludes that Blackhawk has failed to establish that plaintiff is subject to the administrative employee exemption and that he is therefore entitled to overtime compensation for the two years preceding the date on which this suit was brought.

In 1999, Blackhawk was contracted by FedSource, Inc. to provide construction services to the federal government on a construction project at the Naval Air Station (NAS) in Meridian, Mississippi. Blackhawk employed plaintiff Fred Burns as a construction representative and assigned Burns to the NAS project. Burns had worked as a construction representative for various employers for about twenty years and had extensive knowledge, training and experience in various aspects of construction. Generally, Burns' job involved monitoring the work of contractors on the project to ensure the work was properly performed.

The FLSA establishes the general rule that all employees must receive overtime compensation for hours worked in excess of forty hours during a seven-day workweek. See 29 U.S.C. § 207(a)(1). Employees are entitled to overtime compensation according to the general rule unless their employer proves that one of the many exemptions applies. Vela v. City of Houston, 276 F.3d 659, 666 (5th Cir. 2001). "These exemptions are construed narrowly against the employer and the employer has the burden of proving that an employee is exempt." Tyler v. Union Oil Co. of Ca., 304 F.3d 379, 402 (5th Cir. 2002) (citing Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990)); see also Vela, 276 F.3d at 666-667. Burns claims that under the FLSA, he was entitled to time-and-a-half for his overtime hours; but Blackhawk maintains

that Burns fell under the FLSA's administrative employee exemption.

The FLSA exempts from its overtime requirements, any salaried employee "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). See Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 264 (5th Cir. 2000). Congress has charged the Secretary of Labor with issuing regulations defining and delimiting the term "bona fide administrative capacity." The regulations "define[] the terms executive, administrative and professional by setting out 'long' tests for employees earning more than $155 per week but less than $250 per week, and 'short' tests for employees earning more than $250 per week." Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (5th Cir. 2000). Because it is undisputed that Burns earned a salary of at least $250 per week, the Department of Labor's "short test" for determining administrative employee status applies. See 29 C.F.R. § 541.214.

Under the "short test," an employee is qualified for the administrative exemption if (1) the employee is compensated on a salary basis, (2) the employee's "primary duty consists of either the performance of office or nonmanual work directly related to management policies or general business operations of the employer," and (3) "the performance of such primary duty includes

work requiring the exercise of discretion and independent judgment."  29 C.F.R. §§ 541.214(e)(1) and (2).

It is undisputed that Burns was compensated on a salary basis.  Further, Blackhawk maintains that Burns' duties directly related to the employer's general business operations.  NAS was Blackhawk's customer, and Burns performed work directly related to NAS's general business operations, which include contracting out and overseeing the construction projects on its premises.  As Blackhawk notes, Burns' work was in the nature of quality control, and the Secretary's regulations specifically provide that "[w]ork reltaed to management or general business operations includes . . . *quality control*."  29 C.F.R. § 541.201(b).  See also Dalheim v. KDFW-TV, 918 F.2d 1220, 1229-1230 (5th Cir. 1990) (work is "'directly related' if it is of 'substantial importance' to the business operations of the enterprise in that it involves 'major assignments in conducting the operations of the business, or ... affects business operations to a substantial degree'"); Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 369 (7th Cir. 2005) (to meet requirement that work be "directly related to general business operations," "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment").

4

In fact, Burns does not deny that his work satisfies the requirement of being "directly related to the employer's business operations." He does contend, however, that he did not exercise sufficient discretion and independent judgment in his duties to fall within the administrative employee exemption from FLSA coverage. One of the regulations interpreting the FLSA, 29 C.F.R. § 541.207, defines and explains discretion and independent judgment, stating that these terms indicate that "the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207(a). See Heidtman v. County of El Paso, 171 F.3d 1038, 1042 (5th Cir. 1999). "Moreover, in order to qualify for the administrative employee exemption, an employee must be required to exercise discretion and independent judgment 'customarily and regularly.'" Heidtman, 171 F.3d at 1042 (quoting 29 C.F.R. § 541.207(g)). The regulations explain that discretion and independent judgment involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." Id. § 541.207(a). The phrase also "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Id. That choice need not be final or otherwise immune from review; an exercise of discretion or independent

5

judgment may "consist of recommendations for action rather than the actual taking of action." Id. § 541.207(e). The regulations also caution against confusing true discretion and independent judgment with the "use of skill in applying techniques, procedures, or specific standards." Id. § 541.207(b)-(c)(7). "Employees who fit the latter description, whom the regulations describe as workers who grade, classify, or otherwise determine whether specified standards are met, are not exercising discretion or independent judgment for purposes of the administrative exemption." Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 873-874 (7th Cir. 2008) (citing § 541.207(c)(1)-(2)).[1]

---

[1] In 2004, the Secretary issued a comprehensive set of new regulations addressing the scope of the overtime exemptions. 69 Fed.Reg. 22122, 22260 (Apr. 23, 2004) (codified at 29 C.F.R. § 541.200). The new regulations replaced the short test and the longer test at section 541.2(a)-(e) with a "general rule" for determining whether an employee works in an administrative capacity. Id. at 22139. See Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 869-870 (7th Cir. 2008). Because the new regulations, which took effect August 23, 2004, *after* Burns' employment with Blackhawk ended, do not apply retroactively, see Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 369 (7th Cir. 2005), the old short test still determines whether Burns falls within the administrative exemption, see Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 869-870 (7th Cir. 2008). However, as the court noted in Roe-Midgett, the new "general rule," "merely restates the short test's two 'duties' requirements." Id. The new regulations include an additional explanation that an administrative employee must exercise discretion or independent judgment "with respect to matters of significance." Id. (citing 29 C.F.R. § 541.200(a)(1), (3) (2006)). "While that qualifying phrase was not explicitly part of the old test, it was built into the old rule's definition of "discretion and independent judgment" found elsewhere in the applicable regulations." Id. (citing 69 Fed.Reg. at 22143). "In other words, the new 'general rule' is essentially a simplified

6

In the court's opinion, the evidence does not support a conclusion that Burns exercised sufficient discretion or independent judgment to fall within the administrative employee exemption.  At trial, Burns described the functions of his job.

Prior to the government's bidding out the project, Burns was required to familiarize himself with the proposed plans and specifications and review the site to ensure there was nothing that would interfere with the proposed construction and to ensure that the necessary utilities were available at the site to permit construction to proceed.  After the contract was awarded, he was responsible for monitoring the project on behalf of the project manager or superintendent.  He functioned as the "eyes and ears" of the construction manager, to make sure the contractor performed the work in accordance with the requirements of the contract.

As Burns described his job, he was required to be knowledgeable about the requirements of the contract so that he could monitor the contractor's compliance with the contract specifications.  He had to review the specifications and daily schedule each day before going to the site so that he would know what was to be done that day; and he was required to review the contractor's daily reports to make sure the contractor had actually performed the work that was represented as having been performed.  He also reviewed the contractor's invoices to ensure

---

restatement of the old 'short test.'" Id.

that the work the billed had actually been completed.  Burns was required to observe/inventory construction materials to ensure compliance with the contract specifications.  And he had to observe and monitor the contractor's work, including materials installation and testing, to ensure compliance with the contract specifications.  By way of example only, he would observe the work to see if the contractor used the proper number and type of screws; if it properly installed the correct wiring; or if the concrete was as called for in the contract and was properly tested.  Burns was also responsible for coordinating construction activities between the contractor and base personnel.  And he was required to review proposed design changes and bring them to the attention of the construction manager.

Yet, Burns maintains in all of this, he had no discretion; his job was merely to monitor and report.  If he observed something that was to have been done but was not done, his duty was to notify the project manager.  If he observed any deviation from the contract specifications, his job was to bring that to the attention of the construction manager.  If there were delays in construction, this had to be brought to the attention of the project manager.  If the contractor requested a design change, no matter how small, that had to be approved by the project manager.  He had no authority to make design changes at all; he had no authority to accept deviations from plan specifications.  He could

schedule overtime for the contractor; but he could not approve overtime.

Blackhawk claims, though, that Burns exercised discretion and independent judgment every time he observed a project and decided whether it met the requisite standards. It reasons that Burns used "independent judgment" because NAS relied on Burns' judgment in evaluating the quality of the construction. However, it is clear from the evidence that the extent of Burns' use of "judgment" was in determining whether the contractor's work conformed to the contract; he merely compared the work performed to the contract requirements, and if it did not conform, he notified the project manager. In the court's opinion, this does not qualify as the use of "independent judgment" within the contemplation of this exemption.

Blackhawk also argues that Burns exercised discretion and independent judgment every time he observed a project and perceived a problem that he felt should be reported to the project manager. But if Burns found a "problem," i.e., a deviation from the contract specifications, he had no discretion; he was to report the deviation to the project manager who had the sole authority to address any such deviation. In the court's opinion, this does not qualify as "discretion and independent judgment." See Heidtman, 171 F.3d at 1042 (jury's finding that employees did not, customarily and regularly, exercise discretion and

9

independent judgment was supported by record where evidence showed that most of the employees' functions "were mechanical, rather than discretionary, in nature," and where "any significant decision required the approval of a superior").

Based on the foregoing, the court concludes that Blackhawk has failed to sustain its burden to prove that Burns' position is exempt from the FLSA's overtime requirements. Accordingly, Burns is entitled to an award of overtime compensation. However, previously, in ruling on Blackhawk's motion for summary judgment, the court held that if Burns were ultimately found entitled to overtime, any back pay award would be limited to that earned for the two years before he filed his complaint because any possible misclassification of Burns as exempt under the FLSA was not willful. Burns v. Blackhawk Management Corp., 494 F. Supp. 2d 427, 436 (S.D. Miss. 2007) (citing 29 U.S.C. § 255(a) (an action for unpaid wages "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued")).

The evidence at trial established that during the time period commencing December 27, 2003 and continuing through the date of his termination on July 4, 2004, Burns worked a total of

approximately 95 overtime hours, for which he was compensated at his regularly hourly rate of $20 per hour.  He is accordingly entitled to an additional $950.00 in overtime compensation.[2]

Based on the foregoing, the court finds and concludes that plaintiff did not fall under the administrative employee exemption or any other FLSA exemption; that defendant failed to compensate plaintiff for his overtime in accordance with the FLSA; and that plaintiff is entitled to recover the sum of $950 in unpaid overtime compensation.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED 12th day of August, 2008.


/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[2] At trial, plaintiff offered a computation of the amount of overtime he claimed is due him, but his computation did not take into account the fact that he was actually paid his hourly rate of $20.  When questioned about this, plaintiff claimed there were some overtime hours for which he was not paid *at all*.  However, plaintiff offered no evidence in support of this vague assertion.

11